**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WALTER PAGAN,

Petitioner,

v.

No. 05-CV-1135 (LEK/DRH)

JAMES BERBARY, Superintendent,

Respondent.

---

**APPEARANCES:** | **OF COUNSEL:**

WALTER PAGAN
Petitioner Pro Se
No. 03-B-0749
Marcy Correctional Facility
Box 3600
Marcy, New York 13403-3600

HON. ANDREW M. CUOMO
Attorney General for the State of New York
Attorney for Respondent
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204

ED J. THOMPSON, ESQ.
Assistant Attorney General

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Petitioner pro se Walter Pagan ("Pagan") is currently an inmate in the custody of the New York State Department of Correctional Services ("DOCS") at Marcy Correctional Facility. Pagan was found guilty on January 14, 2003 of attempted murder, criminal trespass, and criminal possession of a weapon after a bench trial in Onondaga County Court and is presently

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

serving a determinate term of seven years imprisonment to be followed by five years post-release supervision. Pagan now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that: (1) he was denied the services of an interpreter, (2) the evidence was insufficient to prove intent to kill beyond a reasonable doubt, (3) his sentence is harsh and excessive, (4) there was a conflict of interest with his trial counsel,[2] (5) the victim committed perjury, and (6) he was improperly denied material evidence before trial. For the reasons which follow, it is recommended that the petition be denied.

## I. Background

On April 20, 2002, Pagan was removed from the home of Laureen Sullivan ("Sullivan") with whom he had shared a relationship. The police told Pagan he could not return to the house. T. 336.[3] A week later, on April 27, 2002, Sullivan returned home from a visit to her aunt's house in Auburn, New York. T. 97. Sullivan expected her house to be empty, but she heard a noise from the upstairs and thought it might be Pagan. T. 102-03. When Pagan came downstairs, he was visibly agitated. T. 270, 273. Pagan proceeded to follow Sullivan into her bathroom where she was planning to take a shower. T. 107.

Sullivan next remembered waking up on her bathroom floor with something wrapped around her neck. T. 109. Pagan was standing over her, pulling a ligature so tight that Sullivan was unable to speak or breathe. T. 111. Sullivan tried to resist Pagan's force, but was unable

---

[2]This contention is asserted in both Grounds Three and Five of Pagan's amended petition.

[3] "T." followed by a number refers to the page of the trial transcript included with respondent's answer. Docket No. 16, Ex. 5.

to overcome his power and passed out again. T. 112. After regaining consciousness, Sullivan realized her face was covered in blood and Pagan was nowhere to be found. T. 113. Sullivan called 911 and was subsequently treated for the injuries she sustained. T. 116.

Pagan was found guilty and sentenced as indicated above. On November 19, 2004, the Appellate Division unanimously affirmed the conviction and sentence. People v. Pagan, 784 N.Y.S.2d 815, 816 (4th Dept. 2004). Application for leave to appeal to the New York Court of Appeals was denied on January 13, 2005. People v. Pagan, 4 N.Y.3d 766 (2005). Pagan filed a motion to set aside the verdict pursuant to N.Y. Crim. Proc. Law §§ 330.30(1) and 330.30(3),[4] which was denied on March 20, 2003. Docket No. 16, Ex. 7 at 7. Pagan also filed a motion to vacate the judgment pursuant to N.Y. Crim Proc. Law § 440.10(1)(a),[5] which was denied on May 20, 2005. Docket No. 16, Ex. 18 at 3. This action followed.

## II. Discussion

### A. Interpreter

In the first ground of his amended petition, Pagan contends that he was denied his right to an interpreter during trial. Respondent contends that Pagan did not have any language difficulties that impaired Pagan's ability to comprehend the trial or communicate with counsel.

In criminal proceedings, "accused defendants have a constitutional right to be provided with the services of an interpreter." Abdullah v. INS, 184 F.3d 158, 164 (2d Cir.

[4]Section 330.30 governs motions to set aside a verdict before sentencing.

[5]Section 440.10 governs motions to vacate sentence and judgment.

1999) (citing United States ex. rel. Negron v. New York, 434 F.2d 386, 390-91 (2d Cir. 1970)). The right to an interpreter derives from the Fourteenth Amendment right to due process. See United States v. Cirrincione, 780 F.2d 620, 634 (7th Cir. 1985) (agreeing with the Second Circuit that due process requires a "meaningful opportunity to be heard"). However, the constitutional right to an interpreter is not absolute. The service of an interpreter is left to the discretion of the court in situations where the defendant's ability to communicate with counsel and understand the proceedings is unimpaired. See United States v. Lim, 794 F.2d 469, 471 (9th Cir. 1986). Criminal defendants also posses a statutory right to an interpreter in situations where a defendant's ability to communicate with counsel or comprehend of the proceedings is impaired. 28 U.S.C. § 1827(d)(1); see also Lim, 794 F.2d at 470.

Here, a review of Pagan's conduct, prior to and during the trial, indicates that he both understood and spoke English. When Pagan was detained and read his rights, he spoke freely in English to law enforcement officers. Docket No. 16, Ex. 3 at 8. Pagan waived his right to a jury trial, representing to the court, in English, that he understood this right and wished to waive it. T. 5. Also, Pagan wrote letters to the trial judge in English. Docket No. 16, Ex. 11 at A165-71. Pagan never requested an interpreter during trial and nothing on the trial record indicates that Pagan was unable to understand the proceedings. Further, the court's failure to hold a hearing on Pagan's 330.30 motion is not reviewable by a habeas court. See Franza v. Stinson, 58 F. Supp. 2d 124, 152 (S.D.N.Y 1999).

Therefore, the petition on this ground should be denied.

**B. Insufficiency of Evidence**

Pagan contends in his second ground that the trial evidence was insufficient to prove his guilt beyond a reasonable doubt. Respondent contends that Pagan's conviction is supported by substantial evidence.

A defendant who claims that the evidence was not sufficient to sustain a conviction bears a very "heavy burden." United States v. Pierce, 224 F.3d 158, 164 (2d Cir. 2000). The weight of the evidence and the credibility of the witnesses are determinations for the jury and are not grounds for reversal. See United States v. Vasquez, 267 F.3d 79, 91 (2d Cir. 2001); Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). "[T]he critical inquiry on review of the sufficiency of the evidence . . . [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry asks the court to determine if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319; see also Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000).

Here, Pagan contends that the evidence of intent for the attempted murder charge was insufficient because Sullivan did not sustain life-threatening injuries and Sullivan later stated that Pagan did not try to kill her. For attempted murder in the second degree, a court need not find that there were life-threatening injuries; instead, a court must find that the defendant intended to kill the victim. See N.Y. Penal Law §§ 110.00, 125.25. Viewed in the light most favorable to the prosecution, the evidence showed that Pagan entered Sullivan's house after being forbidden to do so, knocked her unconscious, and then

proceeded to choke Sullivan. T. 102, 109, 111. Pagan tightened the ligature around Sullivan's neck, cut off Sullivan's ability to breathe, caused her to lose consciousness, and fled. T. 112. A review of the record thus indicates that there was sufficient evidence to support the conviction for attempted murder in the second degree.

Therefore, the petition on this ground should be denied.

**C. Harsh and Excessive Sentence**

Pagan contends in his fourth ground that the sentence imposed violated his Eighth Amendment right to be free from cruel and unusual punishment. Respondent counters that this claim is not cognizable for review because the sentence falls within the statutory range.

The Eighth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment and prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII; Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433-34 (2001). Relief under § 2254 is available to correct constitutional errors or violations of federal law, thus limiting review to determinations of whether convictions violate the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991). If a sentence imposed by a state court is within the limits set by statute, there is no ground for habeas relief. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).

Here, Pagan was convicted of attempted murder in the second degree, which carried a determinate term of five to twenty-five years in prison. See N.Y. Penal Law §§ 70.02(3)(a), 110.05(3), 125.25(1). Pagan was sentenced to a term of seven years in prison to be followed by five years post-release supervision. See Docket No. 16, Ex. 7 at

14. Pagan's sentence falls below the maximum sentence statutorily allowed and does not violate the Eighth Amendment.

Therefore, the petition on this ground should be denied.

**D. Conflict of Interest**

In the third and fifth grounds of the amended petition, Pagan contends that there existed a conflict of interest between his trial counsel and a witness for the prosecution. Respondent contends that Pagan failed to show that an actual conflict of interest existed.

The Sixth Amendment right to counsel is a fundamental right which guarantees criminal defendants the effective assistance of counsel. See U.S. CONST. amend. VI; Strickland v. Washington, 466 U.S. 668, 686 (1984); Cuyler v. Sullivan, 446 U.S. 335, 344 (1980). The right to the effective assistance of counsel includes representation free from conflicts of interest. See Fletcher v. Mann, 956 F. Supp. 168, 172 (N.D.N.Y. 1997). When a claim of ineffective assistance of counsel is based on an alleged conflict of interest, there is a per se violation only if the circumstances were so severe that prejudice is presumed. Examples of per se violations found in this circuit include an unlicensed attorney failing to satisfy the substantive requirements for admission to the bar and an attorney implicated in the defendant's crime. See United States v. O'Neil, 118 F.3d 65, 70-71 (2d Cir. 1997); United States v. Novak, 903 F.2d 883, 886 (2d Cir. 1990).

If the conflict of interest does not rise to the level of a per se violation, a defendant must establish an actual conflict of interest that resulted in a "lapse of representation" in order to qualify for the presumption of prejudice. Cuyler, 446 U.S. at 349; United States v. Fulton, 5 F.3d 605, 609 (2d Cir. 1993). A lapse of representation occurs when there is

some plausible alternative defense strategy not pursued by counsel. See United States v. Moree, 220 F.3d 65, 69 (2d Cir. 2000). Finally, if a defendant establishes the mere possibility of a conflict of interest, he or she must prove that counsel's performance fell below an objective standard of reasonableness and the reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 688, 694. An actual and relevant conflict of interest exists if the attorney's and defendant's interests diverge with respect to a material factual or legal issue or with respect to a course of action. See Moree, 220 F.3d at 69.

Here, the mere possibility of a conflict of interest alleged by Pagan is unsupported by any evidence regarding the performance of his attorney, Paul Carey, at trial. Pagan contends that Carey was in contact with Sullivan throughout the trial, but Pagan fails to allege that this contact adversely affected Carey's performance. A potential conflict of interest that is not detrimental to the counsel's performance does not violate the Sixth Amendment. Strickland, 466 U.S. at 688, 694. Based on the record, it appears that Carey provided effective representation and Pagan's right to the effective assistance of counsel was not violated.

Therefore, the petition on this ground should be denied.

**E. Perjured Testimony**

Pagan contends in his sixth ground that the prosecution forced Sullivan to commit perjury during the trial. Respondent contends that there is no evidence of perjury.

To prevail on an alleged due process violation arising from perjury, Pagan must

establish that perjury was in fact committed and that it was material. Campbell v. Greene, 440 F. Supp. 2d 125, 147 (N.D.N.Y 2006). Further, the perjured testimony must be such that it was very likely to affect the verdict. Sanders v. Sullivan, 863 F.2d 218, 225-26 (2d Cir. 1988) ("[T]he perjured testimony . . . must be of an extraordinary nature . . . [and] it must leave the court with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted"). Testimony is material if "the receipt of such testimony 'undermine[d] confidence in the outcome of the trial.'" Campbell, 440 F. Supp. 2d at 147 (quoting United States v. Bagley, 473 U.S. 667, 678 (1985)). If the prosecution is unaware of the alleged perjury, the "petitioner must establish that the jury 'probably would have acquitted [the defendant] in the absence of the false testimony.'" Campbell, 440 F. Supp. 2d at 147.

Here, Pagan contends that Sullivan committed perjury because she was forced to testify by the District Attorney, Christine Garvey. However, nothing on the record indicates that Sullivan actually perjured herself at trial. Encouraging or even insisting that Sullivan testify does not mean that Garvey forced Sullivan to lie. Pagan offers no concrete evidence of perjury and, even if he did, Pagan fails to show that the testimony was material.

Therefore, the petition on this ground should be denied.

**F. Brady Violation**

Pagan contends in his seventh and final ground that he was improperly denied material evidence before trial. Respondent contends that Pagan's claim is without merit.

A prosecutor is required to disclose exculpatory evidence to the defense when this evidence is material to the question of guilt or punishment. Brady v. Maryland, 373 U.S.

83, 85-87 (1963). The evidence is material if there is a reasonable probability that its disclosure would have led to a different result. See United States v. Payne, 63 F.3d 1200, 1209 (2d Cir. 1995). Brady material "must be disclosed in time for its effective use at trial." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001).

Here, Pagan contends that he was improperly denied access to the knife and 911 tapes that were used against him at trial. However, both the knife and the 911 tapes were not in any way exculpatory, in fact, they both tended to prove further Pagan's guilt.

Therefore, Pagan was not denied material exculpatory evidence and the petition on this ground should be denied.

## III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated: July 2, 2007
Albany, New York

David R. Homer
United States Magistrate Judge